UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DOROTHY RHIM,

    Plaintiff,

vs.   Case No.  3:07-cv-122-J-MCR

MICHAEL J. ASTRUE[1], Commissioner of the
Social Security Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[2]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.   PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on April 13, 2004, alleging an inability to work since October 26, 2003.  (Tr. 47-50, 52).  The Social Security Administration ("SSA") denied the application initially and upon reconsideration.  (Tr. 19-20).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on July 18, 2006.  (Tr. 427-468).  On October 26, 2006, the ALJ issued a decision

---

[1] Michael J. Astrue became the Commissioner of Social Security Administration on February 1, 2007.  In accordance with Fed. R. Civ. P. 25(d)(1), Michael J. Astrue should be substituted as Defendant in this litigation.

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 13).

finding Plaintiff not disabled. (Tr. 11-18). Plaintiff filed a Request for Review by the Appeals Council on November 20, 2006 (Tr. 7), but the Appeals Council denied the request on January 26, 2007 (Tr. 4-6). Accordingly, the ALJ's October 26, 2006 decision is the final decision of the Commissioner. Plaintiff timely filed her Complaint in the United States District Court on February 21, 2007. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since October 26, 2003 (Tr. 52) due to pain in her feet, hands, back, shoulder, right buttocks, and knees (Tr. 104).

### B.     Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was 50 years old with a limited high school education. (Tr. 48). Plaintiff has past relevant work experience as a shirt presser, printer, and more recently, as a cleaner. (Tr. 79, 433-35).

#### 1.     Plaintiff's Impairments[3]

Plaintiff began being treated by John Crick, M.D. on September 19, 2000 for pain in both of her hands. (Tr. 188). After obtaining nerve conduction studies of Plaintiff's hands, on November 14, 2000, Dr. Crick performed an endoscopic carpal tunnel release on Plaintiff's left hand and steroid injections on both of her middle fingers. (Tr. 150-165, 187). During a follow up appointment on December 27, 2000, Dr. Crick noted Plaintiff had good range-of-motion and good sensibility, but some soreness and tenderness. (Tr. 180). He recommended she remain on light work status for at least a month. Id. Dr. Crick placed

---

[3] This summary of Plaintiff's impairments will be limited to the issues Plaintiff raises on appeal.

Plaintiff on maximum medical improvement ("MMI") status as of February 6, 2001, with a 1% permanent impairment rating. (Tr. 179). He authorized Plaintiff to return to her normal work status as of February 7, 2001. Id.

On April 10, 2001, Dr. Crick noted Plaintiff was having pain in the palmar aspect of her hand; he diagnosed her with tenosynovitis of her left middle finger. (Tr. 178). On September 11, 2001, Dr. Crick diagnosed Plaintiff with recurrent stenosing tenosynovitis flexor sheaths bilaterally and provided her with steroid injections for the pain, which provided her relief. (Tr. 175-76). On March 11, 2002, however, Plaintiff complained of right hand carpal tunnel syndrome and continued pain in both middle fingers. (Tr. 174). Dr. Crick again provided her steroid injections to her middle fingers and recommended she see a rheumatologist. Id.

On September 30, 2003, Plaintiff still complained of pain in her hands. (Tr. 173). Dr. Crick diagnosed her with carpal tunnel syndrome on the right and flexor tenosynovitis on the left thumb. Id. As of October 10, 2003, Plaintiff's left thumb was doing well, but her right hand continued to bother her with numbness and tingling. (Tr. 172). Plaintiff underwent endoscopic carpal tunnel release on her right hand on November 19, 2003. (Tr. 171). Afterwards, she had some tenderness in her palm and forearm, but good sensibility, motion, and thenar motion function. (Tr. 168). Dr. Crick authorized Plaintiff to return to work as of January 5, 2004; however, Plaintiff told him she had been fired from her job. Id. On January 26, 2004, Dr. Crick noted tenderness in the right palm with a little sensitivity, but good sensibility in the fingers and good motion. Dr. Crick placed Plaintiff at MMI status as of January 26, 2004, with a 3% permanent whole body impairment rating. (Tr. 167).

On August 17, 2004, Plaintiff underwent a disability evaluation by William V.

Choisser, M.D. (Tr. 189-90). Dr. Choisser examined Plaintiff and diagnosed her with recurring bilateral carpal tunnel syndrome, even after bilateral surgery for carpal tunnel release and bilateral foot pain secondary to previous surgeries and multiple callus formation. (Tr. 190). He also examined Plaintiff's range of motion, opthalmological, and perimetric visual fields, all of which were normal. (Tr. 191-95).

Over the course of several years, Plaintiff was evaluated at Shands on various occasions and at times complained of hand pain. For instance, on June 19, 1996, Plaintiff complained of bilateral hand numbness and was diagnosed with a history of carpal tunnel syndrome. (Tr. 338). She was given wrist braces on both wrists and told to avoid repetitive motions. (Tr. 339). On September 7, 2000, Plaintiff was diagnosed with bilateral hand pain. (Tr. 324). Then on April 16 and April 24, 2003, Plaintiff was admitted to Shands for complaints of left hand pain. (Tr. 312-314). Plaintiff was diagnosed with cellulitis[4] of her left thumb. Id.

On February 22, 2005, Plaintiff underwent an independent psychiatric evaluation at the request of the SSA's Division of Disability Determinations. (Tr. 349-350). Eduardo A. Sanchez, M.D. opined that Plaintiff did not meet the criteria for a psychiatric diagnosis. (Tr. 350). He stated, "I do feel that from the strict psychiatric standpoint she should be able to function in a job situation and to manage her own financial affairs." Id.

On March 24, 2005, Plaintiff underwent a physical examination, also at the request of the SSA's Division of Disability Determinations. She complained of pain in her back, arms,

---

[4] Cellulitis is an infection of the skin and/or soft tissue of the body. This infection often starts with a small wound such as an insect bite, scratch, or small puncture wound. Symptoms include pain, local swelling, redness, firmness, and tenderness. (Tr. 315).

and hips.  Hung V. Tran, M.D. noted she was diagnosed with carpal tunnel in 2000 and had surgeries for it in 2000 and 2002.  (Tr. 351). He further noted that her hands were better at the time of his evaluation, but they still caused her some pain.  Id.  Dr. Tran diagnosed Plaintiff with an old operation on her hands, pain in back, pain in right hip, and asthma.  (Tr. 354).

Plaintiff was seen by Daryl Makoff, Doctor of Podiatric Medicine, on March 25, 2005. (Tr. 423).  Plaintiff complained of hard skin on her feet.  Id.  After examining Plaintiff's feet, Dr. Makoff diagnosed her with bilateral porokeratoma[5] in her heels and she underwent debridement of her skin lesions to decrease pain and pressure.  Id.  She was told to use pads daily.  Id.

Two state agency physicians performed Physical Residual Functional Capacity ("RFC") Assessments on Plaintiff (Tr. 122-129; 196-203).  The first one appearing in the record (Tr. 122-129), however, lacks a signature and date and thus, the Court will discount it.  The second physical RFC assessment in the record was performed on November 15, 2004 and the reviewing state agency consultant opined Plaintiff had the ability to lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and she was not limited in her ability to push or pull.  (Tr. 197).  He further opined that she was frequently limited in climbing, stooping, kneeling, crouching, and crawling and was occasionally limited in balancing.  (Tr. 198).  The consultant also noted Plaintiff had handling and fingering (gross and fine manipulation) limitations.  (Tr. 199).

---

[5] Porokeratoma is a benign "plugged sweat gland."  See www.advancedfootsurgery.com/calluses.asp (Last visited on March 11, 2008).

On March 13, 2002, Steven L. Wise, Psy. D., completed a psychiatric review technique form on Plaintiff. (Tr. 130-143). He opined Plaintiff had no medically determinable impairment, but she had a coexisting non-mental impairment that required referral to another medical specialty. (Tr. 130).

### 2. Summary of Plaintiff's Testimony

During Plaintiff's hearing with the ALJ on July 18, 2006, Plaintiff testified that she worked as a cleaner at the Kennel Club in Jacksonville from September 2005 through January 2006. (Tr. 434-437). She stated she left this job because she could not handle it anymore. (Tr. 436). She complained that her feet, hands, and body were in constant pain every morning. Id. She testified that she was terminated from her previous job at AeroMark as a clothes presser because she missed work frequently due to her children's illnesses. (Tr. 439). Plaintiff also stated that she collected unemployment compensation for about a year after she was terminated from AeroMark. (Tr. 440).

Plaintiff stated she had trouble walking due to the calluses or bunions on her feet. (Tr. 443). She complained of pain in her legs, hands, and back. (Tr. 443-44). She stated she has not regularly seen a physician for her back and leg pain, but she was seen at Shands for these complaints and was prescribed pain medication. (Tr. 445). She testified that her worst pain was in her feet and that this pain on average is a level 17 out of 25. (Tr. 447). She also testified her hand, back, and leg pain are at about a level 12 or 13 out of 25. Id. She estimated that she could sit about 45 minutes at a time, stand about 15-20 minutes at a time, walk about 15 minutes at a time, and carry about 10 pounds. (Tr. 448-49). Plaintiff stated that on a typical day she gets up, feeds her kids and gives them a bath, sits around and watches television, does some cleaning, and prepares lunch and dinner. (Tr.

450).  She told the ALJ that she receives assistance from the Government for acting as a caregiver for her two children and also receives food stamps.  (Tr. 451-52).  She previously received worker's compensation and she has a medicaid card.  (Tr. 453).  Finally, Plaintiff stated she does the grocery shopping for the family.  (Tr. 454)

### C.     Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(f).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(g).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the non-disability requirements

for a period of disability and DIB as set forth in Section 216(i) of the Social Security Act through March 31, 2010.  (Tr. 11).  At step one, the ALJ found Plaintiff had engaged in substantial gainful activity from September 2005 through January 8, 2006.  (Tr. 13).  At step two, the ALJ held Plaintiff's "history of carpal tunnel release, bilaterally; bilateral foot heel pain secondary to porokeratoma, bilaterally [sic] heel" are severe impairments.  Id.  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).  (Tr. 14).  The ALJ determined Plaintiff retained the RFC "to perform light exertional level [sic] that does not require more than occasional climb and balance; frequent stoop, kneel, crouch, and crawl; frequent heights and hazards; no vibration; occasional gross and fine manipulation of right and left hand."  (Tr. 14).

At step four, based on the testimony of the vocational expert ("VE"), the ALJ found Plaintiff is unable to perform any of her past relevant work.  (Tr. 17).  At step five, also based on the testimony of the VE, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Id. (citing 20 C.F.R. 404.1563).  Specifically, the ALJ noted the VE had determined Plaintiff could perform the position of a school bus monitor and a counter clerk.  (Tr. 18).  Accordingly, the ALJ determined Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore, is not disabled.  Id.

## III.    ANALYSIS

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as a finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining a court must scrutinize the entire record to determine the reasonableness of the factual findings).

### B.    Issues on Appeal

Plaintiff argues three issues on appeal.  (Doc. 25).  First, she asserts the ALJ erred

when he classified Plaintiff's RFC because he improperly discounted Plaintiff's pain in her hands and feet. (Doc. 15, p. 4-7). Second, Plaintiff argues the ALJ erred by failing to show the existence of suitable alternative employment as a result of his failure to restrict Plaintiff's ability to stand or walk despite finding Plaintiff's foot impairments severe. Id. at 8. Lastly, Plaintiff claims the ALJ failed to meet his burden to show the existence of a significant number of jobs that Plaintiff could perform. Id. at 9-13.

### 1. Whether the ALJ properly evaluated Plaintiff's RFC and Credibility

Plaintiff argues the ALJ improperly determined Plaintiff's RFC when he discounted Plaintiff's pain in her hands and feet. (Doc. 15, p. 4). Plaintiff asserts the ALJ based his decision to discredit Plaintiff's pain testimony on an inaccurate assessment of Plaintiff's daily activities, medical findings by Dr. Choisser, and the lack of medication taken by Plaintiff on a regular basis. (Doc. 15, p. 4-7). The Court has reviewed the record and finds the ALJ did not err when he evaluated the credibility of Plaintiff's subjective complaints.

The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Even if "the ALJ does not cite or refer to the language of the three-part test," the pain standard is properly addressed when the ALJ's "findings and discussions indicate that the standard was applied." Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In the present case, the ALJ applied the Foote test when he determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." When Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7P. The ALJ based his credibility findings on the lack of medical evidence supporting Plaintiff's complaints, the lack of medical treatment generally, the lack of medication taken by Plaintiff, and Plaintiff's wide range of daily activities. (Tr. 15-16).

Having reviewed Plaintiff's entire record, the Court finds the ALJ properly considered Plaintiff's subjective testimony of pain and his reasoning for discrediting such testimony is supported by substantial evidence. Notably, the records show Plaintiff had only seen a podiatrist, Dr. Makoff, on one occasion, and Dr. Makoff's findings did not indicate Plaintiff's problems with her feet were severe enough or painful enough to prevent her from working. Rather, Plaintiff's neurologic and musculoskeletal functions were intact and other than bilateral heel porokeratoma, there was no indication of any other issues with her feet. Moreover, the ALJ gave credit to Plaintiff's complaints about the pain in her hands and specifically took her allegations of decreased lifting and occasional gross and fine

manipulation into account when determining her RFC. The Court also agrees with the ALJ's statement that he would have expected to see more evidence of medical treatment and use of medications if Plaintiff was in as much pain as she claimed to be, especially considering Plaintiff sought care for other medical conditions, her husband is employed, she received funds from government assistance, and has received workers compensation and unemployment compensation. Moreover, Plaintiff's description of her daily activities, while not dispositive of this issue, does support the ALJ's conclusion that Plaintiff is not disabled. 20 C.F.R. § 404.1529(c)(3)(i); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987). She is able to go to the grocery store, do housework, and generally care for her children. Finally, the ALJ correctly noted that Plaintiff worked as a cleaner during the period she was allegedly disabled. This fact further supports the ALJ's conclusion. The ALJ has met his duty to set forth specific and adequate reasons for discrediting Plaintiff's testimony regarding her subjective complaints.

### 2. Whether the ALJ Satisfied His Burden by Showing the Existence of Suitable Employment

Plaintiff next argues that the ALJ erred by failing to pose hypothetical questions to the VE which restricted Plaintiff's ability to stand or walk because of the problems with her feet. (Doc. 15, pp. 7-8). Plaintiff asserts that if the ALJ included restrictions in Plaintiff's ability to stand or walk, some of the jobs which the ALJ found Plaintiff capable of performing would likely be eliminated. Id. Consequently, Plaintiff reasons the ALJ failed to meet his burden of showing the existence of suitable employment for which Plaintiff was capable of performing. Plaintiff requests the case be remanded for additional development. Id.

As mentioned above, Plaintiff failed to present sufficient evidence that the problems with her feet affected her ability to work. Accordingly, the ALJ did not err when he failed to restrict her ability to stand or walk when he posed hypothetical questions to the VE. In fact, the ALJ considered her complaints of pain in her feet and restricted her ability to climb and balance. The ALJ's RFC assessment is supported by substantial evidence and thus, there is no need for additional development on this issue.

### 3. Whether the ALJ Satisfied His Burden to Show the Existence of Jobs in Significant Numbers that Plaintiff Could Perform

Lastly, Plaintiff argues that the ALJ erred because he failed to satisfy his burden at step five to show that Plaintiff had the ability to perform jobs which exist in significant numbers in the national economy. (Doc. 15, p. 9-12). Plaintiff questions what is meant by "significant numbers" and argues that three job titles consisting of only 13,000 jobs in Florida is not significant. Id. at 11. Plaintiff also argues that had the ALJ included restrictions on Plaintiff's ability to walk, he would have likely found Plaintiff capable of performing only sedentary work. Id. This result would have lead to a finding that Plaintiff was only capable of performing the position of surveillance system monitor – a position for which there are less than one thousand jobs existing in Florida. Id.

To meet his burden at step five, the ALJ must articulate specific jobs that Plaintiff is able to perform which exist in significant numbers in the national economy and this finding must be supported by substantial evidence. Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989). As already mentioned, the ALJ did not err by not restricting Plaintiff's ability to stand or walk and thus, contrary to Plaintiff's suggestion, all three jobs which the VE testified

Plaintiff was capable of working, are relevant to this issue. In total, there are approximately 13,000 jobs in Florida for these positions and over 204,000 jobs available nationwide. The Eleventh Circuit has made it clear that the requisite standard is much less than that found by the ALJ in this case. In <u>Brooks v. Barnhart</u>, the Eleventh Circuit was faced with this very issue, i.e., what constitutes work in significant numbers. 133 Fed. Appx. 669, 671 (11th Cir. 2005). It concluded that 840 jobs in the national economy is sufficient to meet the significant number test. <u>Id.</u> Here, the ALJ, in relying on the VE's testimony, identified more than enough jobs to meet the significant number test and his findings are supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  24th  day of March, 2008.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record